UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN GILBERT,<br><br>               Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>               Defendant. | No. 1:20-cv-00873-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 21)** |

**I.    Introduction**

Plaintiff Kathryn Gilbert ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1] Docs. 21, 26, 27. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

**II.    Factual and Procedural Background[2]**

On December 1, 2016 Plaintiff applied for disability insurance benefits alleging a disability onset date of August 6, 2015. The Commissioner denied the application initially on April 4, 2017 and on reconsideration on June 21, 2017. AR 88, 98. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on February 21, 2019. AR 38–86. On May 16, 2019 the ALJ issued a decision denying Plaintiff's application. AR 17–37. The Appeals Council denied review on April 22, 2020. AR 6–11. On June 23, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 9 and 10.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III. **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.     The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of August 6, 2015.  AR 22.  At step two the ALJ found that Plaintiff had the following severe impairments: generalized anxiety disorder.  AR 22–23.  The ALJ also determined at step two that Plaintiff had the following non-severe impairments: breast cancer with chemotherapy and residual symptoms of fatigue and weight loss.  AR 23.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 23–25.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitation: no public contact more than 2 hours per day.  AR 25–31.

At step four the ALJ concluded that Plaintiff could perform her past relevant work as a veterinary technician/animal health manager as actually performed.  AR 31–32.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged disability onset date of August 6, 2015.  AR 32.

### V. Issues Presented

Plaintiff asserts one claim of error: that the ALJ erred in formulating the RFC as it is inconsistent with all mental health treating and examining source opinions.

### A. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9,

1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Licensed Clinical Social Workers are not "acceptable medical sources." 20 C.F.R. § 404.1513 (2013).[3] Rather, they are considered to be "other" medical sources. *Id*; 20 C.F.R. § 404.1513(d)(1) (2013). Unlike the opinions of treating physicians, the opinions of "other" treating sources are not entitled to special weight. 20 C.F.R. § 404.1527(c)(2) and (f)(1). An ALJ may reject the opinions of "other" sources by giving "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), superseded by regulation on other grounds; *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Inconsistency with medical evidence is a germane reason. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

---

[3] The Social Security Administration has adopted new rules applicable to claims filed on or after March 27, 2017, which expand the category of acceptable medical providers to include some additional providers not previously included. 20 C.F.R. §§ 404.1502(a)(8) (2017); 416.902(a)(8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

**B.     Analysis**

Plaintiff observes initially that the ALJ rejected all opinions of record in reaching the RFC, including the non-examining state agency physicians' opinions, the opinions of the examining consultants Drs. Bonilla and Seward, and the opinion of the treating therapist LCSW Olson. Br. at 7, Doc. 21.

The non-examining state agency physicians, Drs. Aquino-Caro and Collado, reviewed Plaintiff's file at the initial and reconsideration levels and concluded she had no severe mental impairment. AR 94, 104. The ALJ assigned those opinions little weight because they did not have access to later dated medical evidence, evidence which showed her mental impairment was severe (though ultimately not disabling) in that it affected her ability to work more than minimally. AR 29. Adopting the non-examining opinions would have resulted in a non-disability finding at step two. Thus, the ALJ's rejection of those opinions did not disadvantage Plaintiff. Nor did the rejection of those opinions require the ALJ to adopt any of the remaining opinions in whole or in part. In formulating the RFC the ALJ's task is not simply to pick between the opinions in the record. The RFC need not mirror any particular opinion, it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).

Plaintiff attended two psychiatric consultative examinations on March 12, 2017 and April 2, 2019 with Drs. Bonilla and Seward, respectively. AR 270; 355. Dr. Bonilla identified diagnoses of unspecified anxiety disorder, adjustment disorder with depressed mood, nicotine abuse in remission, and breast cancer in remission. AR 273. Dr. Bonilla opined that Plaintiff had various mild limitations which are not at issue, as well as moderate limitations in the following areas: detailed and complex tasks; social interaction; handling workplace stress and change. AR 273–74. Dr. Seward identified a diagnosis of generalized anxiety disorder and performed various cognitive and psychological tests. Dr. Seward opined that Plaintiff had a variety of mild limitations which

are not at issue, as well as moderate limitations in the following areas: detailed and complex tasks; maintaining regular attendance; consistent performance of work activities; completing a normal workday/workweek without interruptions from a psychiatric condition; dealing with workplace stress. AR 361–62.

The ALJ assigned only partial weight to the opinions of Drs. Bonilla and Seward. AR 29. In so concluding, the ALJ noted evidence of Plaintiff's activities of daily living including driving and handling finances, as well as her average scores on psychometric testing, evidence which demonstrated the ability to perform detailed and complex tasks. AR 29.

Plaintiff disputes the ALJ's assertion that Dr. Seward's opinion was inconsistent with Plaintiff's average scoring on psychometric testing, which Plaintiff contends is factually inaccurate considering her borderline processing speed and notable difficulty on "Trailmaking B"[4] which, according to Dr. Seward, suggested she'd have difficulty performing complex tasks at a consistent pace. Br. at 7 (citing AR 358–60).

The ALJ's finding is reasonably supported. The ALJ stated that Plaintiff's scores on psychometric testing were "generally" in the average range, not entirely in the average range, which was factually accurate. AR 27. Indeed, in the various areas tested between the WAIS-IV and WMS-IV tests, Plaintiff scored high average, average, or low average for all but one: processing speed index (her score corresponded to the 8th percentile). Moreover, Plaintiff's Full-Scale IQ (of which processing speed index was 1 of 4 components) corresponded to the 42nd percentile. As to the connection between any cognitive deficit and Plaintiff's anxiety disorder, Dr. Seward stated that the deficits in information processing "may be consistent and resulting from the presences of an anxiety disorder," not that those deficits definitively or probably were consistent with or

---

[4] The "Trailmaking test" was described as "a measure of general brain function and assesses the presence of possible brain damage" and involves connecting numbers and letters in an ascending sequential order under time constraints. AR 360.

7

resulting from the anxiety disorder. AR 359.

Plaintiff also scored below average in "Trailmaking B." The reference value for a suspicion of neurological impairment was greater than 91 seconds on trailmaking B, and Plaintiff took 151 seconds to complete it, corresponding to the 15th percentile. The objective description of the trailmaking test reflects that neurological impairments are "suspected" when the individual exceeds the indicated time limits, not that the test results were definitive for neurological impairments.

The ALJ reasonably declined to include mental limitations based on the Trailmaking B score, or based on one borderline score for processing speed among otherwise average cognitive testing. Granted, Dr. Seward certainly possesses expertise in interpreting those test results that the ALJ lacks, expertise presumably brought to bear in reaching his conclusion that Plaintiff had various limitations in mental functioning. Nevertheless, the ALJ is not beholden to such opinions, otherwise uncontested examining opinions would be dispositive as to the functional limitations they identify. The ALJ reasonably rejected Dr. Seward's identified functional limitations where the results of cognitive testing were generally within the average range save for the two exceptions identified above, and where other evidence in the record was suggestive of adequate mental functioning such as consistently normal mental status examinations, a wide range of activities of daily living, and conservative treatment.

Plaintiff disputes the ALJ's conclusion that her activities of driving and handling finances undermine the opinions of Drs. Seward and Bonilla that she was moderately limited as to detailed and complex tasks. Br. at 8. Plaintiff questions the connection between the cited activities and an ability to perform detailed and complex tasks. As to her driving, the connection is admittedly tenuous. The connection between managing finances and performing detailed/complex tasks is less tenuous. Moreover, driving and handling finances were but two examples of the daily activities the ALJ had previously described in more detail, which included: paying bills, counting change,

handling a savings account, using a checkbook and money orders, attending to personal care, independently, cleaning, vacuuming, doing dishes, doing laundry, shopping, running errands, preparing meals for her family, reading, and caring for a horse.

The ALJ explained that these activities "replicate those necessary for obtaining and maintaining employment." AR 28. The Court would hesitate going so far considering the step four finding was predicated on Plaintiff's ability to perform her past work as a veterinary technician as actually performed, which entailed maintaining the health of 900 exotic animals on a private ranch, administering their medications, and supervising nine animal handlers. AR 32. Notwithstanding, the ALJ's finding was stronger than it needed to be to sustain the decision. Plaintiff's daily activities were sufficient to undermine the opinions that she has a myriad of moderate mental limitations, even though those activities need not affirmatively establish her ability to return to work. *See Valentine v. Commissioner Social Sec. Admin*., 574 F.3d 685, 693 (9th Cir. 2009) (upholding an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

Task complexity and detail aside, Plaintiff contends the ALJ did not address the remaining moderate limitations identified by Drs. Bonilla and/or Seward, including deficits in concentration, attendance, and coping with workplace stress. Although the ALJ did not overtly address those limitations at the point in the decision where he specifically addressed the examining opinions, the ALJ identified other applicable reasoning earlier in his decision and subsequently incorporated that reasoning by reference when addressing the examining opinions.

For example, at step three the ALJ evaluated Plaintiff's abilities in four broad functional areas (the paragraph B criteria). As to concentration, persistence and pace, the ALJ found Plaintiff

had a mild limitation. AR 24. In so concluding, the ALJ noted as follows: that Plaintiff demonstrated adequate attention and concentration at the consultative examinations, performed a three step command and correctly stated how many quarters are in $2.25. *Id.*

Additionally, at step four the ALJ acknowledged that treatment records did show impaired memory and distracted attention beginning in August 2018, but reflected otherwise normal mental status examination findings including normal speech, normal thought process, intact associations, unremarkable thought content, no suicidal or homicidal ideation, intact language, intact fund of knowledge, congruent mood and affect, normal level of consciousness, normal orientation, good hygiene, intact insight and judgment. AR 26 (citing exhibits 2F, 5F, 7F, 9F and 10F).

The ALJ further noted records reflecting that Plaintiff's condition quickly improved and stabilized with medication. AR 26 (citing Ex. 9F, AR 304-313). Finally, the ALJ noted that Plaintiff's treatment had been routine and conservative, limited to medication prescribed by her primary care physician and counseling with a licensed clinical social worker, with no need for more aggressive treatment such as specialized psychiatric care or hospital admission. AR 28. An impairment for which a claimant receives only conservative treatment is an appropriate reason to reject an opinion that an impairment is disabling. *See Jackson v. Colvin*, No. 2:15-CV-06123 (VEB), 2016 WL 5947225, at *5 (C.D. Cal. Oct. 12, 2016), *citing Johnson v. Shalala*, 60 F.3d 1428,1434 (9th Cir. 1995)).

Plaintiff does not acknowledge or dispute the ALJ's broader reasoning in support of the RFC. That reasoning was equally applicable to the ALJ's rejection of the contrary examining opinions. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion . . . if those inferences are to be drawn.).

Finally, Plaintiff disputes the ALJ's rejection of the opinion of her treating therapist, LCSW Olson, who identified work preclusive limitations in every respect, to wit: 10-15 percent performance preclusion for all 20 out of 20 individual mental abilities; more than 30% daily off task behavior; and more than 5 days per month of absenteeism due to mental health impairments. AR 294–99. Plaintiff disputes the sufficiency of the ALJ's articulated reasoning in that the ALJ dismissed LCSW Olson's opinion as conclusory and inadequately supported by objective medical evidence without citing specific portions of the opinion that were unsupported, or specific portions of the record that undermine the opinion. However, neither the regulations nor controlling law require specific reasoning for rejecting the opinion of an "other" source. Rather, an ALJ may reject the opinions of "other" sources, such as an LCSW, by giving "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), superseded by regulation on other grounds; *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

Inconsistency with medical evidence is a germane reason for rejecting such an opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). In rejecting LCSW Olson's opinion, the ALJ noted that it was based on subjective statements, not objective medical evidence. AR 29. The ALJ also incorporated by reference all applicable reasoning articulated earlier in the decision, including normal mental status examinations, favorable response to conservative treatment, and Plaintiff's activities of daily living. AR 30. The ALJ was not required to repeat the previously articulated reasoning insofar as the ALJ had already identified substantial evidence to support the RFC and identified specific and legitimate reasoning for discounting the examining opinions of Drs. Bonilla and Seward. It follows that the same reasoning justifies rejection of LCSW Olson's opinion, a more extreme opinion to which a less demanding standard applies. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (finding that an ALJ provides germane

reasons for rejecting lay witness testimony when the lay witness's testimony is substantively similar to other subjective testimony that has already been validly rejected.).

### VI. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Kathryn Gilbert.

IT IS SO ORDERED.

Dated: __**August 6, 2022**__         _____**/s/ Gary S. Austin**_____
                                   UNITED STATES MAGISTRATE JUDGE